LYMAN LAMB Co. *v.* UNION BANK OF BENTON.

5-3188                                                     374 S. W. 2d 820

Opinion delivered February 3, 1964.

*Patten & Brown, John M. Loftin, Smith, Williams, Friday & Bowen,* by *George E. Pike, Jr.* for appellant.

*Fred E. Briner,* for appellee.

PAUL WARD, Associate Justice. We are herein concerned with priority of liens on a house and lot owned by Kelly Welch. The four appellants furnished materials and appellee furnished the money to construct the house, and both parties claim a first lien. The trial court ruled in favor of appellee bank, and appellants now seek a reversal on appeal.

The facts are not in dispute, and only one issue of law is relied on by appellants.

It is appellants' contention that the mortgage executed by Welch to appellee is not a "construction mortgage" as is required by Ark. Stat. Ann. § 51-605 (1947) as it has been interpreted by this Court. We agree with that contention.

*Facts.* On May 9, 1962 Welch and wife executed a note to appellee (Union Bank of Benton) for the amount of $2,500, and at the same time they also executed a mortgage on "Lot 40, Block 4 in Beautiful Lakeview sub-division, Saline County, Arkansas" to secure said note. Following the above description in the mortgage appear these typewritten words:

"This loan shall be used for the purpose of construction of a dwelling house on the above described property and shall cover and secure additional advances to be made by mortgagee to mortgagors in the total amount not to exceed $14,500."

The mortgage, except for the above quoted language, was in regular form, and it was filed on May 11, 1962. The $2,500 was paid to Welch on the day the note was executed. Following that date, and on May 25, 1962, one of appellants furnished certain materials—placed on the lot—and construction began. Following the last mentioned date, and on June 1, 1962, Welch executed another note for $2,500 to appellee bank and received the money. Thereafter Welch executed four other notes to appellee, each time receiving the money—to a total of $14,500. After the first material was furnished at the time previously mentioned all the appellants furnished other materials and labor. The unpaid balance amounts to approximately $2,600.

In the decree of foreclosure the bank was given a first or prior lien to secure the amount due from Welch, and the land and improvements were ordered sold by a commissioner. At the sale the property was bought by appellee. Later the sale to appellee was confirmed, and the court ordered the purchase price credited on the judgment which appellee had received against Welch.

*Only Issue.* It is conceded by appellants that appellee's mortgage is a first lien to the extent of $2,500. This is a concession by appellants that the previously quoted language in the mortgage constitutes a compliance with the statute and our decisions so as to make it a "construction loan"—the mortgage having been filed before any materials were furnished. However, appellants contend, and we agree, that appellee's mortgage did not constitute a prior or first lien as to subsequent advances because the bank was not obligated to make them. This obligation was a prerequisite to appellee's lien, as was clearly announced in *Planters Lumber Co.* v. *Jack Collier East Co.,* 234 Ark. 1091, 1096, 356 S. W. 2d 631. There, in construing § 51-605, we said: "The mortgagee must be bound to advance the money for the construction . . .", citing *Ashdown Hardware* v. *Hughes,* 223 Ark. 541, 267 S. W. 2d 294.

We find no language in the mortgage here which unequivocally binds the bank to make the additional loans to Welch. Rather, the contrary is indicated by certain language in the mortgage. This language appears:

"The sale [mortgage] is on condition that whereas we are justly indebted unto said mortgagee in the sum of . . . $2,500 evidenced by *one* promissory note of even date. . . ." (Emphasis added.)

We think the language in this mortgage falls far short of the standard (to bind the mortgagee) set in the case of *American Bank & Trust Company* v. *First National Bank of Paris,* 184 Ark. 689, 43 S. W. 2d 248, where, among other things, the Court said:

"One may execute a valid mortgage to secure a debt to be contracted in the future . . . but in order to do so, there must be an *unequivocal agreement* in the instrument itself that it is given for debts to be incurred in the future." (Emphasis added.)

The word "unequivocal", according to Webster, means "clear," "not doubtful", "not ambiguous". We are not

willing to say the language in this mortgage unequivocally obligated appellee to make the subsequent loans.

It is conceded by appellants that appellee must have had notice of appellants' lien previous to making subsequent advances (*Superior Lumber Co.* v. *National Bank of Commerce,* 176 Ark. 300, 2 S. W. 2d 1093), but it was stipulated here that appellee knew materials were furnished to Welch before the second advance was made. As we interpreted § 51-607 and § 51-613 [Ark. Stat. Ann. (1947)] in the *Planters Lumber Co.* case, appellants' liens dated back to the time when the first material was furnished and all of appellants' liens were on an equality.

Somewhat incidentally it seems, appellants, claiming they had no notice, ask that, on reversal, the sale be set aside. We see no merit in this request. Regardless of whether appellants had a first or second lien, a sale was necessary. Appellee says one of appellants was at the sale and even made a bid. In all events, appellants certainly knew of the trial court's decree and its contents, and it provided for a sale of the land. Also, the record fails to show any objection by appellants when the sale to appellee was confirmed.

Accordingly, the decree of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HARRIS, C.J., and ROBINSON, J., dissent.