SOUTHERN TRUST MORTGAGE COMPANY, Appellant, *v.* K & B DOOR COMPANY, INC., NEVADA DRYWALL COMPANY OF LAS VEGAS, INC., MS CONCRETE COMPANY, NEVADA PAINTING COMPANY OF LAS VEGAS, INC., OWENS PLASTERING COMPANY, INC., RIVERSIDE ACOUSTICS, INC., BUD YATES CONSTRUCTION COMPANY, INC., WHOLESALE BUILDING SUPPLY, DEAN ROOFING, CLASSIC PLUMBING, STRAWN INSULATION, DAVIS MASONRY, ARC AMERICA, KIMTRUSS, STRATTON ELECTRIC, TROPIC AIR CONDITIONING, WICKES LUMBER AND XA CABINET, Respondents.

No. 17630

October 26, 1988                           763 P.2d 353

[Rehearing denied January 31, 1989]

*Jolley, Urga, Wirth & Woodbury,* Las Vegas, for Appellant.

*John Peter Lee* and *Barney C. Ales,* Las Vegas, for Respondents K & B Door Company, Inc., MS Concrete Company, Nevada Drywall Company of Las Vegas, Inc., Nevada Painting Company of Las Vegas, Inc., Owens Plastering Company, Inc., Riverside Acoustics, Inc. and Bud Yates Construction Company, Inc.

*L. Earl Hawley,* Las Vegas, for Respondent Classic Plumbing.

*Vargas & Bartlett,* Las Vegas, for Respondent Strawn Insulation.

*Robert K. Dorsey,* Las Vegas, for Respondent Wholesale Building Supply.

*Leavitt & Leavitt,* Las Vegas, for Respondent Dean Roofing.

*John P. Foley,* Las Vegas, for Respondent Arc America.

*E. Leslie Combs, Jr.,* Las Vegas, for Respondent Kimtruss.

*Donald R. Davidson,* Las Vegas, for Respondent Stratton Electric.

*John Boyer,* Las Vegas, for Respondent Wickes Lumber.

*Harding & Dawson,* Las Vegas, for Respondent XA Cabinet.

*Marquis & Haney,* Las Vegas, for Respondent Tropic Air Conditioning.

*Hale, Lane, Peek, Dennison & Howard* and *Richard L. Elmore,* Reno, for Amicus Curiae Chicago Title Insurance Company.

## OPINION

*Per Curiam:*

Appellant Southern Trust Mortgage Company (STM) financed the Victoria Villas housing project in Clark County. The developer, Renaissance Development Company, Inc. (Renaissance), arranged a loan from STM for the estimated construction costs. The first funds were advanced on December 22 of 1981, secured by a deed of trust on the whole project. The loan agreement between STM and Renaissance very unequivocally provided that

> [a]nything herein to the contrary notwithstanding, it is specifically understood and agreed that *all funds* furnished by

> Lender [STM] and employed in performance of the obliga-
> tions of Borrower [Renaissance] under this agreement shall
> be deemed advanced by Lender *under an obligation to do so*
> regardless of the identity of the person or persons to whom
> such funds are furnished.

(Our emphasis.) Apparently designed to remove any conceivable quibble about the obligatory nature of future advances by STM to Renaissance, the same paragraph of the loan agreement went on to specify that

> [f]unds *advanced* in the reasonable exercise of its [STM's] judgment that the same are needed to complete the improve-
> ments or to protect its security are to be deemed *obligatory advances* hereunder and are to be added to the total indebted-
> ness secured by the Note and Deed of Trust and said indebt-
> edness shall be increased accordingly.

(Our emphasis.)

All parties agree, and the trial court found (by adoption of the master's report), that if STM were legally *obligated* to lend Renaissance additional funds to complete the project, all amounts loaned under the original acquisition and development loan and all subsequent advances made under interim construction loans would relate back to the security of the December 1981 deed of trust.[1] Such circumstances would result in STM's holding a priority lien by its deed of trust which is superior to all other liens, including the mechanic's liens claimed by the named respondents. Therefore, the dispositive question in this case and on this appeal is whether the future advances made by STM were obligatory and thus secured by the December 1981 deed of trust.

There is nothing in the loan agreement or other documents created by the parties, nor in the parties' conduct, nor in the nature of the parties' legal relations that even remotely suggests anything but a clear duty on the part of STM to advance monies under the agreed-upon "obligation to do so." This conclusion is cemented by the parties' unambiguous written agreement that "all funds" are "to be deemed obligatory advances." It is diffi-
cult to explain how anyone could rationally come to a contrary conclusion.[2]

---

[1] This kind of arrangement is broadly accepted in the financial world. For a textual discussion see, for example, 2 H. Miller and M. Starr, *Real Estate Law*, 11:115 (Rev. Ed. 1977) (Wherein the authors discuss the rather common type of situation in which a deed of trust contains a future advances clause, and the lender is obligated to make advances. Such obligatory advances take priority from the date of the recordation of the original deed of trust.)

[2] In apparent disregard of the specific language of the deed of trust, which declared the advances to be "obligatory," the respondents argued and the

Perhaps the only explanation of this untoward result lies in the fact that this case was turned over in its entirety by the district judge to a special master who was authorized by the trial court to hear and decide the whole matter. The trial judge's order appointing the special master improperly authorized a lay person "to take and hear the evidence offered by the respective parties, to ascertain and report upon the subject liens and the amounts, if any, justly due thereon, and to make findings of fact on *all issues* set forth in the pleadings." (Our emphasis.) We need not go at great length into the impropriety of the trial judge's handling of this matter because the very nature of our decision makes such a discussion unnecessary. Suffice it to say that neither NRS 108.239(5),[3] nor NRCP 53(b)[4] authorized the district judge to refer "all issues set forth in the pleadings" to the special master. Moreover, in addition to the fact that there is no statutory authority empowering the trial judge to refer the entire case to a special master, this court has previously warned that "this type of blanket delegation approaches an unallowable abdication by a jurist of his constitutional responsibilities and duties." Russell v. Thompson, 96 Nev. 830, 830, 619 P.2d 537, 539 (1980).

As discussed above, there is but one crucial and dispositive question determining the outcome of this case: whether STM was legally obligated to make the advances to Renaissance, thereby securing the monies advanced under the December 1981 deed of trust. For the reasons previously stated, we conclude that the deed of trust created in STM a clear contractual duty to supply the advances to Renaissance and that that contract was in full effect until it was breached by Renaissance's diversion of STM funds to another project. Accordingly, the advances paid by STM

---

special master found that because STM had the right to inspect regularly the progress of the construction on the housing project, the advances were mysteriously rendered optional rather than obligatory. Such reasoning is faulty. Parties to a contract must be allowed a means by which to verify whether the terms of that contract are being complied with. To construe the term obligatory advance as a "literal requirement that a lender can have absolutely no discretion or any conditions relating to future advances in a mortgage would defeat the purpose of the loan and probably bring an end to construction money loans." Dempsey v. McGowan, 722 S.W.2d 848, 850 (Ark. 1987).

[3]NRS 108.239(5) permits the appointment of a master to "ascertain and report on the liens and the amount [sic] justly due thereon."

[4]NRCP 53(b) provides that in actions not tried to a jury, the reference to a special master must be limited in scope to "matters of account or difficult computation of damages" unless there is a showing that some other exceptional circumstance necessitates the reference.

were obligatory and therefore secured under the December 1981 deed of trust. The result is that STM's claim is superior to those of the named respondents.

On numerous occasions this court has ruled that where a document is clear and unambiguous on its face, the court must construe it from the language therein. *See* Renshaw v. Renshaw, 96 Nev. 541, 611 P.2d 1070 (1980); Mohr Park Manor, Inc. v. Mohr, 83 Nev. 107, 424 P.2d 101 (1967); Club v. Investment Co., 64 Nev. 312, 182 P.2d 1011 (1947); Rankin v. New England M. Co., 4 Nev. 78 (1868). The language giving rise to the obligatory character of the STM-Renaissance agreement could not be plainer. There is no cognizable issue relative to the breadth of STM's security interest under the December 1981 deed of trust. STM's security is prior in rank to all other liens; hence, the claims of respondents must fail.

This case is reversed and judgment will be entered in favor of Southern Trust Mortgage Company and against the named respondents. The award of attorney's fees and master's fees will be disallowed.[5]

---

[5]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.